## WILLIAM LEWIS *v.* JAMES GIBSON.

A witness may prove, in an action to rescind a sale, that the plaintiff told him, that a slave had informed him (plaintiff) of the redhibitory vice complained of previous to the sale. *Per Curiam :* It was an admission of one of the parties, which the other wished to avail himself of, to show that the former was aware of the vice. The matter intended to be proved was the admission of the party—not the statement of the slave.

Where a party resorts to the conversations or admissions of the other, made out of his presence, he must take the whole or none. He cannot call for those portions only of the statements which are favorable to his case, and reject the rest.

APPEAL from the District Court of Ouachita, *Wilson*, J. The defendant appealed from a judgment annulling the sale of a slave.

*Garrett,* for the plaintiff.

*McGuire* and *Downs,* for the appellant.

GARLAND, J. This suit is instituted to annul the sale of a slave, named *Lige,* sold by the defendant to the plaintiff, in December, 1841, on the ground of the slave being a *runaway.* The defendant admits that he sold the slave. He avers that at the time of, or previous to the sale, he informed the plaintiff of the vice, so far as it existed, and that in other ways he was informed of it. The suit was commenced by attachment against

the defendant, who is a non-resident, out of which several questions have arisen not necessary to state or decide.

The evidence shows that the slave had runaway from the defendant several times in the State of Arkansas, and that he had been guilty of the brutal act of knocking out one of his teeth for doing so. In December, 1841, he brought this and another slave to this State for sale, and kept them for sometime at the residence of a witness named Grayson, where the plaintiff came to see them. He remained at Grayson's a night and part of two days, and went several times into the field to see the slaves, and converse with them. The defendant told the plaintiff that the slave *Lige* had run away once; and he made the communication in such a manner as to induce a belief, or make an impression that he had not run away more than once. He further told the plaintiff, when he asked why he made such a difference in the price between this slave and the other, " that the boy Andrew was one in whom he placed a great deal of confidence, and that in the boy *Lige* he could not; that he had no confidence at all in him." The plaintiff said he wanted to purchase the slave cheap. It is not proved the slave has ever run away from the plaintiff since he owned him.

The witness, Grayson, in the course of his testimony, stated " that Lewis told him, that the boy Andrew told him, that *Lige* had run away two or three times." This was objected to by the plaintiff's counsel, " on the ground that it was only the statement of a negro, and could, in no instance, be received, even when it came from the mouth of plaintiff." The court sustained the objection, " and ordered the evidence to be stricken out;" to which opinion and order a bill of exceptions was taken by the counsel for the defendant. We are of opinion that the judge erred in excluding this testimony. It was an admission of the plaintiff's which the defendant wished to avail himself of, to show that the plaintiff was informed of the vice which the slave had; and we think that he was entitled to the benefit of it, as a circumstance to prove the knowledge of the plaintiff that such a vice existed. The defendant told the plaintiff that the slave had run away once; the latter went to the slave Andrew to inquire about it, and was, as he says, informed that *Lige* had runaway

two or three times. The matter intended to be proved was the admission of the plaintiff, not the statement of the slave; and this constitutes the material distinction between this case, and that of *Gardiner* v. *Cross, &c.*, relied on by plaintiff's counsel, in which the defendants wished to prove what a slave, or slaves had said of the conduct and conversations of the plaintiff, for the purpose of justifying them in a most violent assault and battery on him.

We are further of opinion, that the court erred in striking out that part of the answer of the witness Campbell, which stated what the defendant had told him of the declarations he had made to the plaintiff, at the time of, or previous to the sale of the slave. The witness was stating a conversation he had had with the defendant, subsequent to the sale in Arkansas, in which he said that the reason he sold the slave was that he was a runaway, and that he so informed the purchaser. It is very clear that the defendant could not have availed himself of these declarations as evidence; but if the plaintiff choose to resort to the conversations and admissions of the defendant, held and made out of his presence, he must take the whole of them. He cannot call on a witness to state those portions of the defendant's statements favorable to his case, and reject other portions, made at the same time, that are unfavorable. He must take all that was said at the time, or none at all.

Upon a full consideration of all the evidence, we are of opinion that the plaintiff has not made out a case that entitles him to relief. Sufficient was told him previous to the sale, to put a prudent man on his guard. He said that he wanted to purchase the slave to sell, and wished to " get him cheap." It does not appear that the slave has ever run away since the purchase; no other defect is alleged; and we must, therefore, presume, that the plaintiff has had the full benefit of his services.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed, and ours is for the defendant as in case of a non-suit, the plaintiff paying the costs in both courts.